## DONGES v. BEALL, County Clerk, et al.
### No. 12550.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 28, 1931.

Rehearing Denied April 11, 1931.

Marvin H. Brown, of Fort Worth, for appellant.

Charles T. Rowland, Arthur Lee Moore, Raymond E. Buck, Sol Greines, and David Greines, all of Fort Worth, for appellees.

BUCK, J.

This is a suit by J. R. Donges against Orville Beall, the duly elected and qualified county clerk of Tarrant county, and C. W. Atkinson, the duly elected and qualified county judge of Tarrant county, and against Harve Wright, Joe Schooler, Bill Merritt, and Frank Estil, the duly elected, qualified, and acting commissioners of Tarrant county.

Plaintiff alleged that he had been for a period of four years next preceding the filing of the petition a regularly and lawfully appointed, acting, and qualified deputy county clerk in and for Tarrant county; that he was duly appointed on or about January 27, 1927, to a position as deputy county clerk by Chester Hollis, the then county clerk, and had served as said deputy county clerk for a period of four years, and had performed the duties regularly incumbent upon said position. Plaintiff further alleged that he had been wrongfully and unlawfully discharged and prevented from performing such duties by Orville Beall, the said county clerk; that at the regular session of the Forty-First Legislature, state of Texas, there was passed a general bill and law known as House Bill No. 596, which appears in chapter 81, page 194 et seq., of the General and Special Laws of the Forty-First Legislature, and which law became effective on October 25, 1929; that section 1 of said bill and law specifically provides that the law so passed should operate in, and apply to, all counties within the state of Texas having a population of not less than 150,000 and not more than 175,000 according to the latest United States census, meaning thereby the last official United States census which was had and taken in the year 1920; that said law applied to Tarrant county, Tex., when passed, because the population of Tarrant county, as shown by the census, was between 150,000 and 175,000 people; that said bill and law specifically creates a civil service commission in and for such counties as come within the terms and purview of said law, and provides for the remuneration of such commission and the clerk thereof, and provides for the meetings of such commission, and provides for rules for examinations to be held for the employees in the county offices of such counties as are affected by such law, etc.

Plaintiff further pleaded that for two and one-half years prior to the time said bill and law became effective plaintiff has been a duly appointed acting and qualified deputy county clerk in and for Tarrant county, has had the experience of such deputy county clerk, and has performed, and was capable of performing, the offices, duties, and obligations of such deputy county clerk, and has been at all times since the law became effective acting as such deputy county clerk, and no charge of any character has been filed against him.

Plaintiff alleged that he had drawn a salary of $175 a month, or $2,100 a year, and that such salary was approved by the commissioners' court of Tarrant county. He prayed for a mandatory injunction requiring Orville Beall to permit him to perform the functions and duties of deputy county clerk and to pay him the salary and emoluments that are rightfully his, and an injunction against the commissioners' court to restrain them from paying out to any other person the salary which he alleged belonged rightfully to him.

This petition was duly verified, and upon a hearing before Hon. Bruce Young, judge of the Forty-Eighth Judicial court, he sustained defendants' general demurrer, and the plaintiff has appealed to this court.

### Opinion.

One of the grounds upon which appellees rely is that the Constitution, art. 16, § 30, provides: "The duration of all offices not fixed by this constitution shall never exceed two years."

Appellee urged that a deputy county clerk comes within this inhibition; that he is an officer, and cannot hold his office by reason of appointment for a longer time than two

532

years, and that the petition shows that he had held the office for a period of four years.

In City of Houston v. Albers, 32 Tex. Civ. App. 70, 73 S. W. 1084, by the Court of Civil Appeals of the first district, it was held that under the city charter of Houston, providing that the terms of service of all employees of the police department of said city shall continue during efficient service and good behavior, and under the state Constitution, art. 16, § 30, declaring that the terms of all officers not fixed by the Constitution shall not exceed two years, on the expiration of two years from the date of a policeman's appointment, in the absence of reappointment, he ceased to be an officer de jure, after which the city was only liable for services actually rendered by him and accepted.

In the case of San Antonio Independent School District v. State (Tex. Civ. App.) 173 S. W. 525, writ of error denied, the court held that that part of the local act of 1913, constituting the school board of San Antonio, is unconstitutional in so far as it endeavors to increase the tenure of office to more than two years. See, also, Proctor v. Blackburn, 28 Tex. Civ. App. 351, 67 S. W. 548.

In the case of Pfeffer v. Mahnke, 260 S. W. 1031, 1033, the Commission of Appeals held that chief clerks of the comptroller and secretary of state are "public officers," and cannot hold their office for a longer period than two years without reappointment. Justice Hamilton, speaking for the court, said:

"The service of the secretary of state and the comptroller on the board of education is the performance by each of a duty attached by the statute to the office held by each. The duties are not personal. They are duties attached to the offices. Any holder of the office of secretary of state or comptroller must serve as a member of the board of education as a part of the duties of those offices respectively. Since the statutes provide that the chief clerks may respectively perform the duties attaching to those offices, the chief clerks may, in the contingencies mentioned in the statutes, perform the particular duties attaching to the offices of secretary of state and comptroller by virtue of the statutes making them members of the board of education. In such cases the chief clerks do not perform those duties by delegation of authority from their chiefs. They perform them by virtue of authority of the Legislature in the same way that their chiefs are authorized to perform them. The Legislature could have provided that, in the absence, etc., of the secretary of state and comptroller, the chief clerks of either or each should be members of the board of education. The Legislature has done the same thing in a different way by prescribing that the chief clerks provided by statute shall and may, in the absence of the secretary of state and the comptroller, perform the duties of those officers, among which are duties arising from their membership on the state board of education. Thus the chief clerks are officers provided by statute, and authorized by statute, to perform the duties attaching to the officers of secretary of state and comptroller, making those officers members of the board of education. The full authority of the chief clerks thus to act arises from the acts of the Legislature investing them with such authority when the contingencies mentioned in the statutes arise. There is no delegation of authority to the chief clerks by the secretary of state and the comptroller. In truth and in fact, the secretary of state and the comptroller are impotent to prevent the chief clerks from thus performing the duties of those offices in the contingencies of the statutes authorizing them to act. The chief clerks have the same authority to perform the duties of those offices in those contingencies that the secretary of state and comptroller have to perform them at all other times—the authority of the Legislature. The chief clerks are public officers in the same sense and created by the same legal authority as other statutory officers of the state."

In the case of Towns v. Harris, 13 Tex. 507, it was held that a return of process signed by the deputy sheriff was proper. The court said: "The Deputy Sheriff is an officer known to the law; and as such, his official acts are to be regarded as valid."

Appellant urges that the opinion of Robertson v. Ellis County, 38 Tex. Civ. App. 146, 84 S. W. 1097, 1098, by the Dallas Court of Civil Appeals, is contrary to the contention of the appellees. In this case an official court stenographer appointed under the statutes in force at that time was held to be not an officer, within the meaning of article 16, § 30. Justice Talbot, speaking for the court, said:

"The first question to be disposed of is whether or not the act under consideration is unconstitutional, for the above-stated reasons urged by appellee. This depends, in our opinion, upon the further question whether the position of stenographer created by said act is an office, within the meaning of the word 'office' as used in said section 30, art. 16, of the Constitution, which reads, 'The duration of all offices not fixed by this Constitution shall never exceed two years.' The definition of the term 'office,' as given by Mr. Mechem in his work on Public Officers, is quoted with approval by our Supreme Court in the case of Kimbrough v. Barnett, 93 Tex. 301, 55 S. W. 120, and is as follows: 'A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised

by him for the benefit of the public.' The act authorizing the appointment of official stenographers provides for their appointment by the judges of the district courts, and declares that they shall be sworn officers of the court, and shall hold their office during the pleasure of the court, and further declares that the purpose of such appointment is to preserve the record in all cases for the information of the court, jury, and parties, and, to that end, 'it shall be the duty of the official stenographer to attend all sessions of the court; to take full stenographic notes of the oral evidence in every case tried in said court, together with all objections to the admissibility of testimony, the rulings of the court thereon, and all exceptions to such rulings; to preserve all official notes taken in said court for future use or reference and to furnish to any person a transcript of all or any part of said evidence or other proceedings upon the payment to him of the compensation," etc. Does the act confer upon the stenographer any sovereign function of government? We think not. There is quite a material difference between a public office and a public employment. As said by Chief Justice Marshall, 'Although an office is an employment, it does not follow that every employment is an office.' Mr. Mechem, in his work on Public Officers, says: 'The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer.' Now, while the fact that the position of stenographer is designated in the act providing for its creation as an office, and that it declares that the person who may be called to perform its duties 'shall be a sworn officer of the court,' affords some reason for determining it to be such, still it is believed the place possesses none of those sovereign functions of the judicial department of the government to which it relates, to distinguish it from a mere employment to perform a species of service, under public authority, for the assistance and convenience of the court and parties litigant therein, in which no judicial discretion or judgment is involved. The creation of the position, as shown by the very terms of the act, was designed for no other purpose than to provide some one by whom the oral evidence offered, and other proceedings involving objections made to admissibility of testimony, the ruling of the court, and exceptions thereto, might be taken in shorthand, as a method of preserving those matters as they occurred, without delaying trials, to be afterwards transcribed and furnished the court and parties to the suit, to aid them in an accurate and prompt preparation of the record. The report or transcript of the proceedings by the stenographer is not binding, however, upon the court, and may be adopted or rejected at his discretion. No act which he is authorized to do is independent of the control of others, or vested in him as a supreme power to be exercised as a right or prerogative of a judicial office. We conclude that while the position of a stenographer, under the statute in this state, may be, in a sense, an office, and the term thereof may continue for a longer period than two years, yet there is no such sovereign function of government embraced in the powers conferred upon the individual performing its duties as brings it within the meaning of the word 'office' as used in the section of the Constitution quoted."

It was held in that opinion that a stenographer, appointed by the court, did not come within the term of a "public officer."

In the case of Garrett v. Commissioners' Court of Limestone County, 230 S. W. 1010, 1014, by the Dallas Court of Civil Appeals, it was held that the members of the board of road commissioners were officers. The court said:

" 'The term "office" implies a delegation of a portion of the sovereign power to, and possession of, it by the person filling the office; a public office being an agency for the state, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration, emolument and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not to a merely transient, occasional or incidental employment. A person in the service of the government who derives his position from a duly and legally authorized election or appointment, whose duties are continuous in their nature and defined by rules prescribed by government, and not by contract, consisting of the exercise of important public powers, trusts, or duties, as a part of the regular administration of government, the place and the duties remaining, though the incumbent dies or is changed, every office in the constitutional meaning of the term implying an authority to exercise some portion of the sovereign power, either in making, executing or administering the laws.' Mechem on Public Officers, §§ 1–9."

This case involved the right to enjoin the commissioners' court of Limestone county from unlawfully conferring and usurping the functions of the board in laying out and constructing public roads. The injunction was denied by the trial court, and the plaintiffs

534

below appealed. The trial court's conclusions, upon which the judgment was appealed, may be predicated, as found by the Court of Civil Appeals, that the position held by the members of the board are offices, and the members themselves are officers within the meaning of the Constitution of Texas, and that the creation of such offices and the prescribing of the duties and powers of such officers by the special legislative enactment violated section 56 of article 3 of the state Constitution; that sections 5 and 9 of the special road law and other parts of the law (Sp. Laws 36th Leg., 1919, c. 74), constitute a legislative attempt to control the affairs of Limestone county by special law, taking away from the commissioners' court the power conferred by section 18 of article 5 of the Texas Constitution, and by general statutes, and bestowing that power upon the road board; that the power to locate, change, control, and supervise roads having been conferred upon the commissioners' court by section 18 of article 5 of the Constitution and by general statutory law, the creation of the district board by special law, and clothing it with the powers and duties therein prescribed, is void and in contravention of section 56 of article 3 and section 18 of article 5 of the Constitution; that the law fixes no definite tenure for the members of the board; and that their tenure may be any period of time until the work is completed, which may be less than two years or more than two years, rendering the law in conflict with section 30 of article 16 of the Constitution. This case went to the Supreme Court on a writ of error, and the judgment of the Court of Civil Appeals was reversed and the judgment of the trial court was affirmed in Commissioners' Court of Limestone County v. Garrett, 236 S. W. 970. A motion for rehearing was overruled in 238 S. W. 894. Hence that decision of the Court of Civil Appeals seems to have been overruled by the Commission of Appeals, approved by the Supreme Court.

In the case of Cawthon v. City of Houston, 31 Tex. Civ. App. 1, 71 S. W. 329, it was held, in the light of the constitutional provision fixing the term of office of all officers whose term is not otherwise fixed by the Constitution at two years, to mean that the duration of the term of service of policemen of said city is, during efficient service and good behavior, for two years, as limited by the Constitution.

There are many other questions discussed in the briefs of appellant and appellee, and relied on, but we do not find it necessary to discuss them or to decide the questions therein involved. We believe that under the Constitution, art. 16, § 30, plaintiff below was not entitled to bring the suit, and that the court correctly ruled that the general demurrer should be sustained.

Judgment below is affirmed.

CONNER, C. J., not sitting.